OPINION
{¶ 1} Appellant Steven Whitehurst appeals the decision of the Mount Vernon Municipal Court arguing the trial court erred when it denied his motion for change of venue and denied his motion for summary judgment and granted Appellee Sheet Metal Workers Local 98 Pension Fund's ("appellee") motion for summary judgment. The following facts give rise to this appeal.
 {¶ 2} On February 11, 2002, appellant received a letter from appellee expressing its regret concerning the recent death of appellant's father, a 1984 retiree. Enclosed in the letter was a check in the amount of $1,500, which represented the death benefit, from the pension fund, for retired members. The letter also contained a warning to return any future checks sent by Equitable. Thereafter, the pension fund sent appellant three more checks each in the amount of $1,500. It is these three checks that form the basis of this lawsuit.
 {¶ 3} Appellant accepted the three checks and deposited them into his savings account at The First Knox National Bank. Subsequently, the pension fund requested the return of the three checks and filed suit against appellant on August 2, 2002. On January 21, 2003, the pension plan issued appellant an IRS Form 1099-R which indicated a $6,000 taxable pension distribution. Appellant claims that as a result of this alleged overpayment by the pension fund, he incurred $2,318 in expenses that he would not have otherwise incurred.
 {¶ 4} On September 20, 2002, appellant moved for dismissal of appellee's complaint on the grounds that Knox County was not the proper venue because he lived in Morrow County. The trial court overruled appellant's motion on October 30, 2002, concluding Knox County was the proper venue because appellant's address is Centerburg, which is located in Knox County. Judgment Entry, Oct. 30, 2002. Appellant filed a motion for reconsideration which the trial court overruled on December 4, 2002.
 {¶ 5} Both parties filed motions for summary judgment. On July 29, 2003, the trial court granted appellee's motion for summary judgment and denied appellant's motion for summary judgment. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 6} "I. The court erred in finding that Knox County was a proper venue.
 {¶ 7} "II. The court erred in failing to find the alleged overpayment was made as a result of a mistake in law.
 {¶ 8} III. "The court erred in failing to find that Defendant-Appellant's change in financial position entitled him to retain the overpayment even if, arguendo, the payment was made pursuant to a mistake of fact."
 "Summary Judgment Standard" {¶ 9} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 10} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 11} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 12} It is based upon this standard that we review appellant's assignments of error.
 I {¶ 13} In his First Assignment of Error, appellant maintains the trial court erred in determining that Knox County was a proper venue for this lawsuit. We disagree.
 {¶ 14} In denying appellant's motion for change of venue, the trial court relied upon Civ.R. 3(B)(3)[1] which provides that proper venue may lie in "[a] county in which the defendant conducted activity that gave rise to the claim for relief. See Judgment Entry, Oct. 30, 2002, at 1. The court concluded the cashing or depositing of the checks was an activity that is a material part of the claim. Id. The court also noted that appellee provided no proof that the checks were cashed or deposited in Knox County and therefore, permitted appellant to file a motion for reconsideration in order to submit evidence that he did not cash or deposit the checks in or at a branch office of the First Knox National Bank located in Knox County. Id. at 1-2.
 {¶ 15} Appellant filed a motion for reconsideration on November 12, 2002, attaching the affidavit of his spouse, Tracy Whitehurst. In her affidavit, Tracy opined that she deposited all of the checks into their savings account with First Knox National Bank; that she banks at two branches of the First Knox National Bank, one in Knox County and one in Morrow County; and that she does not remember at which branch she deposited the checks in question. Based upon this affidavit, the trial court overruled appellant's motion for reconsideration on December 4, 2002.
 {¶ 16} On appeal, appellant contends Tracy's affidavit establishes that he did not cash or deposit the checks in or at a branch office of the First Knox National Bank located in Knox County. Instead, appellant maintains his conduct which allegedly gives rise to appellee's claims occurred in Morrow County where he indorsed the checks prior to Tracy cashing or depositing them. Appellant argues Tracy's conduct of cashing or depositing the checks, in the First Knox National Bank, cannot subject him to venue in Knox County.
 {¶ 17} In support of this assignment of error, appellant cites the case of Grange Mut. Cas. Co. v. Thompson (1990), 61 Ohio App.3d 190. TheThompson case involved the fatal shooting of a co-worker. Id. at 192-193. The incident occurred when Duane Thompson shot Arthur Dickerson, Jr. following an argument over a basketball game Dickerson had been involved in the previous evening. Id. at 192. The decedent's spouse subsequently filed a wrongful death action in Cuyahoga County. Id. at 193. Grange Mutual Casualty Company ("Grange") agreed to defend Thompson under a reservation of rights. Id.
 {¶ 18} The wrongful death action proceeded to trial in Cuyahoga County. Id. However, six days before commencement of the trial for the wrongful death action, Grange filed a declaratory judgment action in Franklin County. Id. The wrongful death action resulted in a verdict in favor of the decedent's spouse. Id. Thereafter, the trial court, in the declaratory judgment action, determined Grange's policy provided no coverage for Thompson because the injuries inflicted on Dickerson were expected and intended. Id. at 194.
 {¶ 19} Thompson appealed and argued that venue in Franklin County was improper under Civ.R. 3(B). Id. at 195. The Tenth District Court of Appeals agreed holding that:
 {¶ 20} "1. In order to allow venue under Civ.R. 3(B)(6), significant activity is required in the county rather than random contact with the defendant.
 {¶ 21} "2. The place of making a contract is irrelevant to the issue of where a cause of action arises for its breach; the controlling place is that of the breach." Id. at paragraphs one and two of the syllabus.
 {¶ 22} Appellant relies on the Thompson case for the proposition that significant activity is required in the county rather than random contact. Appellant maintains the cashing or depositing of checks is not significant activity sufficient to establish venue in Knox County.
 {¶ 23} The decision to grant or deny a motion to change venue is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Grenga v. Smith, Trumbull App. No. 2001-T-0040, at 2, 2002-Ohio-1179, citing McGraw v. Convenient FoodMart (June 18, 1999), Lake App. No. 97-L-271. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Further, in a motion for change of venue, the moving party bears the burden of proof. Grenga, supra, at 3, citing Toledo Fair Hous. Ctr. v.Nationwide Mut. Ins. Co. (1996), 94 Ohio Misc.2d 145, 147, 704 N.E.2d 663;Tandon v. Tandon (Apr. 25, 2001), Jefferson App. No. 00-JE-16, at 7.
 {¶ 24} We conclude the trial court did not abuse its discretion when it denied appellant's motion for change of venue as appellant failed to establish that the checks in question were not cashed or deposited in the Knox branch of the First Knox National Bank. In her affidavit, Tracy Whitehurst admits that she does not remember at which branch she cashed or deposited the checks. See paragraph five of the Affidavit of Tracy Whitehurst. Clearly, appellant has not met his burden in establishing that no activity occurred, in Knox County, that gives rise to appellee's claims.
 {¶ 25} We also do not accept appellant's argument that his sole activity giving rise to appellee's claims occurred in Morrow County where he indorsed the checks and that he conducted no activity, in Knox County, that would make venue proper. In her affidavit, Tracy Whitehurst stated that she is "* * * the person in our family responsible for depositing checks into our savings account." Affidavit of Tracy Whitehurst at paragraph two. By indorsing the checks, appellant permitted his spouse to act as his agent in either Knox County or Morrow County when she cashed or deposited the checks and is therefore bound by the acts of his agent.
 {¶ 26} "`An agency relationship is not presumed between husband and wife simply based upon their marital relationship. * * * However, an agency relationship may be created by an express grant of authority, by implication, or by agency by estoppel.' McSweeney v. Jackson (1996),117 Ohio App.3d 623, 630. `Actual agency * * * occurs where there is a consensual relationship between the agent and principal.' Gerace Flickv. Westfield Nat. Ins. Co., Columbiana App. No. 91 CO 45, 2002-Ohio-5222, ¶ 86. `Such actual agency may be informally created and the assent of the parties thereto may be either express or implied.'Wisor v. Zimmerman (March 3, 1987), Athens App. No. 1304, 1987 WL 7226, *2. See, also, Damon's Missouri, Inc. v. Davis (1992), 63 Ohio St.3d 605,608 (a principle of agency is that `an agent, acting within the scope of his actual authority, expressly or impliedly conferred, can bind the principal'). Furthermore, `[t]hat an agency as a matter of law does not exist by virtue of marriage, does not preclude one spouse from being the agent of the other, as long as the authority to act is express, implied or subsequently ratified. * * * An agency may be conferred orally and may be proven by any competent evidence written or oral, direct or circumstantial.' " Eske Properties, Inc. v. Sucher, Montgomery App. No. 19840, 2003-Ohio-6520, at ¶ 97, citing Group One Realty, Inc. v.Cooper (Nov. 23, 1993), Franklin App. No. 93APE08-1080, at 1.
 {¶ 27} The affidavit of Tracy Whitehurst filed in support of appellant's motion for reconsideration indicates that Tracy is responsible for handling banking matters on behalf of the family. Accordingly, when Tracy cashed or deposited the checks, which was within her scope of authority, she did so as an agent for appellant and therefore, her conduct binds appellant even though he merely indorsed the checks and did not physically cash or deposit them into either branch of the First Knox National Bank.
 {¶ 28} Finally, we find the Thompson case distinguishable from the facts of the case sub judice and therefore inapplicable. First, theThompson case concerned Civ.R. 3(B)(6) which permits venue in "[t]he county in which all or part of the claim for relief arose; * * *". In the matter currently before the court, we are concerned only with Civ.R. 3(B)(3), which permits venue in a county where the defendant conducted activity that gave rise to the claim for relief.
 {¶ 29} Second, the Thompson case addressed the issue of venue as it pertains to a contract issue and concluded the controlling place for a breach of contract is where the breach occurred and not the place of making a contract. The matter currently before the court does not involve a breach of contract issue. Instead, we are dealing with a mistaken overpayment.
 {¶ 30} Thus, we conclude the trial court did not abuse its discretion when it denied appellant's motion for change of venue.
 {¶ 31} Appellant's First Assignment of Error is overruled.
 II, III {¶ 32} We will address appellant's Second and Third Assignments of Error simultaneously as both concern related issues. In his Second Assignment of Error, appellant contends the trial court erred in failing to find the alleged overpayment was made as a result of a mistake of law. Appellant maintains, in his Third Assignment of Error, the trial court erred in failing to find his change in financial position entitled him to retain the overpayment even if, arguendo, the payment was made pursuant to a mistake of fact. We disagree with both assignments of error.
 {¶ 33} In the Second Assignment of Error, appellant argues appellee made the extra $1,500 payments because it failed to delete from its computer system an instruction to send appellant a death benefit check. Appellant claims the overpayment was a mistake of law and therefore, he is entitled to keep the extra money. A mistake of law is defined as "* * * a mistake of a person who knows the facts of the case but is ignorant of their legal consequence. Thus, payment made by reason of wrong construction of terms of contract is made under mistake of law." 69 Ohio Jurisprudence 3d (1986) 13-14, Mistake, Section 9.
 {¶ 34} We find the facts of this case indicate that appellee made the three extra $1,500 death benefit payments under a mistake of fact and not a mistake of law. A mistake of fact is defined as a mistaken supposition of the existence of a specific fact. Firestone Tire Rubber Co. v. Cent. Natl. Bank of Cleveland (1953), 159 Ohio St. 423, paragraph two of the syllabus.
 {¶ 35} In the case sub judice, the mistaken supposition was the instruction in appellee's computer system, which was never deleted, that indicated appellant was entitled to a $1,500 death benefit check.
 {¶ 36} The Ohio Supreme Court set forth the general rule concerning the right to recover money paid under a mistake of fact in the case ofFirestone Tire Rubber Co., supra. This rule provides as follows:
 {¶ 37} "Money paid to another under the mistaken supposition of the existence of a specific fact which would entitle the other to the money, which money would not have been paid had it been known to the payer that the fact did not exist, may be recovered, provided the payment does not result in such a change in the position of the payee that it would be unjust to require a refund." Id. at paragraph four of the syllabus.
 {¶ 38} Having determined that appellee paid the $1,500 checks under a mistake of fact, we must now address appellant's Third Assignment of Error concerning whether his change in financial position entitles him to retain the extra money mistakenly paid by appellee. In the Firestone Tire Rubber Co. case, the Ohio Supreme Court set forth the test to be applied in determining the right of recovery of money paid under a mistake of fact. The Court held as follows:
 {¶ 39} "5. The test of the right of recovery of money paid under mistake of fact is whether the payee has a right to retain the money and not whether he acquired possession of it honestly or in good faith. If the money belongs to the payer and the payee can show no legal or equitable right to retain it he must refund it.
 {¶ 40} "8. Where, after payment under mistake of fact, the payee in good faith changes his position so that he no longer has possession of the money or will be in a worse condition if he is required to refund it than if the payer had refused to pay, to such extent the payee is exonerated from repayment." Firestone Tire Rubber Co., supra, at paragraphs five and eight of the syllabus.
 {¶ 41} Appellant claims he is exonerated from repayment for several reasons. First, appellee was grossly negligent when it mailed appellant the three extra death benefit checks and this negligence is a relevant factor in determining the equities in this case. Second, in an affidavit, appellant's accountant indicates that because of the overpayment, appellant has damages in the amount of $2,318, which represents taxes appellant had to pay because he received a 1099-R indicating an income of $6,000. Third, appellant contends he should not have to return the money because after he received the overpayments, he was unemployed for seven weeks and used the extra money on necessary living expenses for himself and his family.
 {¶ 42} Thus, appellant concludes the facts currently before the court are similar to those considered by the Lucas County Court of Appeals in State ex rel. Steger v. Garber (1979), 17 O.O.3d 153. InSteger, the Lucas County Welfare Department made overpayments to Garber, which it subsequently sought to recover. Id. at 154. The trial court found in favor of the welfare department and ordered Garber to repay a total of $2,272. Id. On appeal, the court of appeals reversed the decision of the trial court and held:
 {¶ 43} "Where an aid recipient has met all of his reporting responsibilities concerning the receipt of unemployment compensation benefits but receives funds due to the county department's mistake of fact, the recipient is not liable for return of the funds where he has materially changed his position by expending the funds for essential household maintenance."
 {¶ 44} Appellant maintains, under the authority of Garber, that since he used the overpayments for living expenses, for himself and his family, due to his unemployment, he should not be required to repay the overpayments. We find Garber inapplicable to the facts of this case. The record indicates appellant was aware from a letter he received on February 11, 2002, that should he continue to receive checks from Equitable, he would need to return them. Appellant argues he did not return the checks because they were from the Sheet Metal Workers Local 98 and not Equitable. However, the letter also informed appellant that the $1,500 check he initially received represented "* * * the total sum of the Death Benefit that is payable by the Sheet Metal Workers Local #98 Pension Fund * * *."
 {¶ 45} Therefore, appellant knew he was entitled to receive only one death benefit check in the amount of $1,500. Although appellant may have materially changed his position by depositing and using the proceeds from the subsequent death benefit checks, he did so with the knowledge that he was not entitled to the proceeds from these checks.
 {¶ 46} Accordingly, we find appellant is not entitled to retain the $4,500 overpayment made by appellee.
 {¶ 47} Appellant's Second and Third Assignments of Error are overruled.
 {¶ 48} For the foregoing reasons, the judgment of the Mount Vernon Municipal Court, Mount Vernon, Ohio, is hereby affirmed.
Judgment affirmed.
Gwin, P.J., and Farmer, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Mount Vernon Municipal Court, Knox County, Ohio, is affirmed.
Costs assessed to appellant.
[1] In its judgment entry, the trial court cites Civ.R. 3(B)(2), but cites the language of subsection (B)(3).